I didn't know. You're not wearing a label. May I please the Court, Mr. Katona, for the petitioner? I'd like to reserve two minutes for rebuttal. That's granted. Thank you, Your Honor. This case is before us today, I believe, for a couple of reasons. Firstly, I don't believe this Court has issued a precedential decision on some of the issues that we are looking at today. And also, I think it's important to keep in mind sort of the jurisprudence and the legal backdrop against which we are hearing this case today. In the last several years, the Supreme Court has issued a series of decisions that seem to clarify the ever-increasing awareness of the ambiguities and the inconsistencies in our immigration laws. Since about 2003, the government has given a renewed focus on immigration enforcement. And I think a lot of these ambiguities have, as a result, come forward, which has resulted in these decisions being issued. Specifically, I refer to Padilla, Vartalas, Judelang, and— We have a pretty discrete issue here. We have a pretty specific issue, do we not? The application of the stop-time rule in the fact pattern before us, correct? Correct. That is one issue. I also believe there's the issue of whether a 212C and a cancellation rule can be made in conjunction. I do feel that that's a pertinent issue as well. All right. That's one of your later arguments. Correct. Could we address the initial argument, though, which has to do—or the issue which has to do with the retroactivity of the stop-time rule and applying it here, whether there would be an impermissible retroactive effect? Absolutely, Your Honor. Now, in 1995, your client committed an offense. Correct. And he was not then—he would not then be eligible for a 212C waiver, but instead he was deportable at that time. Is that not correct? He would not have been eligible for a 212C waiver at the time. However, under 212C jurisprudence, he would have been allowed to continue accruing time for the seven years of continuous— But my issue—my question was, he was deportable, correct? Correct. Okay. And under the stop-time rule and under the application of it now, he is deportable under IRERA. So there's really no changed consequences by virtue of the application of the stop-time rule. Isn't that correct? That is assuming that the stop-time rule is applied retroactively. If we look at it in a different way as imposing a—as there being a temporal limitation on retroactivity of the stop-time rule, then we could do it in a different way, and I think that Vartalas actually gave us that perspective. Vartalas, you know, essentially stood for whether or not a pre—an event or a conduct prior to IRERA as applied to post-IRERA definition and admission, which is codified under 101A of the Immigration Act, would be permissible. And the Court found that it would not because of the additional or disability that it would impose on the petitioner's ability to travel. Okay, but here we don't have an additional disability. We have the same effect, deportability. He would not—he was not eligible for the 212C waiver. He was not—but my—our argument, Your Honor, is that Vartalas took a different perspective, okay? If you take the perspective that the right to apply for 212C had to have vested by the time he had committed the crime, then you are correct, but our argument is that Vartalas looked also at the imposition of a new disability on past conduct. Yeah, but the question—the focus, rather, I should say, of the judge's question is what's the new disability, right? There's an independent basis for deportation here, the 1995 conviction, and the question is how is there a new disability created by the application of the stop time? Well, again, my—and my response would be that the disability would be that he would no longer be able to accrue time towards meeting the seven years of continuous residence because of this new law, whereas prior to IHRA, he would have been. So in theory— But you're assuming that the INS is going to sit there and say, oh, we're going to let him accrue and we're not going to throw him out of the country. I mean, he really had no right to be sitting around for seven years to let that accrue, didn't he? Correct, correct, but it could have been, in theory, you know, a criminal defendant sitting down with their criminal counsel could make a calculated decision as to whether or not to plead or go through, you know, the process of taking a case to trial based on a calculated assumption of what was happening at the time. I mean, you know, enforcement at that time was not as prevalent as it is today. Well, see, that's where you lose me. Sitting down with your counsel at that time, the facts of life are you are deportable and don't plan to be around for seven years. Well, your case would be better, right, if this was a 1988 plea or 1989, whatever, and then you'd say, well, he's already been here for seven years by the time the statute goes into effect in 97. But I don't read Vardalos or any of the other cases, certainly none of the cases from our circuit, as saying that short of that circumstance that you satisfy the new disability. Well, I mean, that's taking the view that the temporal limitation would actually kick in,  But if you take a slightly different perspective that, you know, that the temporal limitation essentially kicks in whenever the circumstances of the stop time rule actually trigger, which is the subsequent conviction in 2005, then by that time. So, again, what we're arguing is essentially that the stop time rule essentially should not retroactively apply to our client, and it should not retroactively apply. It should not actually apply until the 2005 conviction, because at that time he would have had seven years of continuous residence. How is it impermissibly retroactive? That's what I'm not getting. Well, I believe it's in the way that you define what a disability is, you know, and my argument is that all the courts that have been looking at this issue look at it from the perspective of a vested right, and Vardalos looked at it from a completely different perspective, because Vardalos was essentially taking Landgraf and basically looking at the definition created by Landgraf as to retroactivity, and Landgraf essentially said that a regulation is impermissibly retroactive if a right or, and if there was an or, a new disability is created. So if we apply Landgraf, how do you prevail if we apply Landgraf? Well, I think the most effective argument is that the 212C application should be permitted in conjunction with a cancellation application, and I believe that's the most effective argument, and if I could get to that point, I would appreciate that. But you're not eligible for a 212C waiver, and your conviction still exists for purpose of cancellation. Well, the 212C would be eligible for 212C as to the prior pre-IRA conviction. What purportedly disqualifies him is, or what purportedly, what it cannot be applied to is the post-IRA conviction, but if the two waivers are made in conjunction and the 212C applies to the prior conviction and the cancellation applies to the post-IRA conviction, and there, you know, the purpose behind the statutory provision, which says that a one-time cancellation grant can be issued, is essentially satisfied by this reading. Mr. General, we never reach the question of addressing those requests for relief concurrently if we hold against you on the retroactivity point, right? Understood, yes. Okay. Question regarding our opinion, non-presidential. Jurado Delgado. There, Judge Jordan and another colleague believe that the characterization of a situation such as this, where deportation would have followed upon the fact that the crime was committed and there's no eligibility for the 212C waiver and the same consequences would occur here, the view expressed in that majority was that it was not, there was no issue of retroactivity because IRIRA postdated the commission of the offense and IRIRA's being, and the deportability is based upon the 2005 conviction. Is that the reasoning that you think follows here? Well, no, I mean, I actually take issue with that reasoning. You know, again, in the Jurado decision, the court essentially said, you know, questions of the retroactivity arise when a case implicates a federal statute enacted after events in a suit. And, you know, reasonable minds can differ as to what events in a suit mean. It could mean all events in a suit, which is essentially the perspective that the court took, or it could mean the events in the suit that are affected by the passage of the new law, which is the perspective that we would take, and we would argue that given sort of the change in jurisprudence in the Supreme Court decisions, that a more narrow interpretation be interpreted or be taken by this court. Secondly, the second prong of the decision as related to retroactivity sort of did essentially imply that the stop-time rule would be applied retroactively. And so our argument is that it should not be applied retroactively in light of recent Supreme Court decisions on this very issue. Well, the majority concluded that there was no reason to even undertake a retroactivity analysis because it viewed this as Congress declaring people who commit certain offenses to be removable and then carving out a certain class of people for relief from that. And the definition ascribed to it was that people who did not commit an offense within their first seven years in the United States would remain eligible for this relief. If you look at it that way, why is there any question at all about retroactive application? Why isn't that application of errea to post-errea conduct? Well, Your Honor, I believe that, again, the imposition of the stop-time rule, we don't actually view that as a qualifying ground. If you look at the cancellation regulation, there are essentially three qualifying elements. One, that there be no aggravated felony. Two, that the individual had held a residency for five years. And three, that there be seven years of continuous residence. The stop-time rule actually acts as a disqualifying factor in a subsequent provision of the cancellation regulation. Similar to Vartalas. Vartalas had a pre-erra-erra conduct, and it questions whether that pre-erra-erra conduct applies to essentially the exception of it under admission. So, again, the disqualifying factor under admission, because 101A13 essentially says that a resident should not be deemed to be seeking readmission to the United States unless, again, a disqualifying factor, unless that person has committed certain offenses. And so the court had said, well, we can impose a new disability, i.e., preventing that person from traveling, you know, on pre-erra-erra conduct. So they clearly created a temporal limitation to that definition of under admission. But that disability of prevention of traveling wasn't there before, correct? So it was a new disability. It was a new disability, just in the same way that 212C was not there at the time he committed the 95 offense, but... Boy, the opportunity that 212C waiver was there, but he didn't qualify for it, correct? Well, every day that passed, he essentially, you know, qualified, you know, would have qualified in that, you know, he would have been allowed to... But at that moment, he didn't qualify. At that moment, he did not qualify, no. Let me ask you this. If we found, as you would hope that we find, that the 95 conviction did not stop the accrual of time and, therefore, this was impermissibly retroactive, can your client now avail himself of the cancellation of removal? Well, our argument would be, again, that he would have to, that he would be able to avail himself of applying for 212C and the cancellation in conjunction. Again, I believe that's the strongest argument. The other way of looking at it is that if the temporal limitation placed upon him triggers at the time of the 2005 conviction and he would have, at that point, accrued seven years, then he could apply for cancellation alone. Can I ask one more? Sure. So let me ask you about Brasinho Flores, which is a presidential opinion from our court that's slightly different but seems somewhat applicable. Why wouldn't we apply the reasoning from that case to say that this situation is not impermissibly suggestive? I apologize, Your Honor, but I'm not familiar with that decision. Okay. Well, it's a, I'll hum a few bars and hope that you remember it. Okay. Maybe we'll jog your memory. So it's a 2007 presidential opinion from our court, and it, Judge Jordan, the quick down-and-dirty is the stop-time rule was retroactive to aliens who committed offenses prior to the passage of IRA-IRA, and after the alien committed a crime of moral turpitude which triggered the stop-time provision. There was no new period of continuous presence commenced. The bottom line is that they denied Brasinho's petition for review, and the key was Brasinho stopped accruing time of continuous physical presence when he committed his first offense. This is a similar instance, earlier offense, later offense. Correct, correct. Can I jog your memory? Yes, Your Honor. Thank you. So, I mean, again, this is a 2007 decision, I believe. Yes. And, you know, we've since had Vardalos, so, again, my, you know, our reasoning is that Vardalos essentially has changed, you know, the analysis on retroactivity, and that, you know, it has created a temporal limitation which this court should recognize, and, you know, it's a question of, in my mind, where that temporal limitation resides, whether it be upon the passage of IRA-IRA or upon the commission of a subsequent post-IRA-IRA offense. And we would argue for the latter. All right. Yes. Do you, you're not arguing on appeal that the retroactive application would take away or impair vested rights or create a new obligation or impose a new duty, right? All we're dealing with is whether there's a new disability. Correct, Your Honor. And on the question of whether the board properly declined to terminate the proceedings to allow your client to pursue naturalization, didn't we already answer the question about the reasonableness of matter fidelgo in Zikrin? What was your answer to that as raised in the respondent's brief? Well, my answer to that is that in this particular case, you know, the Board of Immigration Appeals did not give the petitioner sufficient opportunity to lay out a bona fide claim for naturalization. You know, and we feel that that is, you know, a clear contradiction to the regulation, you know, that's at play. How is that impact on the DHS not attesting to the eligibility? Are you saying he didn't have enough time? Well, the regulation clearly says that the alien shall be given an opportunity to make a bona fide claim for naturalization. Our client, the petitioner, was not given that opportunity. Rather, the court said, you know, you did not seek a bona fide eligibility finding from DHS, but there's essentially no avenue for that. DHS does not provide an avenue for someone prospectively seeking a determination as to whether or not they're eligible for naturalization. That adjudication or that determination is made at the time you appear for your naturalization hearing. And so, you know, what we're arguing is essentially the petitioner should be just given the opportunity to set forth whether he meets the statutory eligibility requirements under the law before the judge, and that opportunity was not provided. All right. Thank you. We'll hear from you on rebuttal. Thank you. Thank you. May it please the court. Tim Rafferty, Manhattan United States Attorney General, Eric H. Holder, Jr. In this immigration case, the Board of Immigration Appeals correctly found there is no retroactive effect to applying the stop time rule to petitioners. Is there an impermissible retroactive effect? Impermissible is part of the land graph analysis, and with Harada, this court's opinion, unpublished, I would argue that's actually the correct way to think about this. We don't even get to the land graph step one and step two analysis, because there's simply nothing retroactive about applying cancellation removal to pre-arrear conduct such as this. Well, let me ask you that. In that case, Judge Jordan, in that opinion, Judge Jordan said that we don't agree with the Ninth Circuit, the Sinodas-Cruz case, as if that case were incorrectly decided. But in Sinodas-Cruz, wasn't the real animating factor there the fact that what would have been here, under the 2005 conviction, was under prior law, not disqualifying from eligibility for the 212C waiver, whereas when it was reclassified by ARERA, it was? So it really would have had an impermissible retroactive effect, would it not? In Sinodas? Yes. Okay, so we're not necessarily disagreeing with Sinodas, nor is it really fair to say that there can be no retroactive effect. I mean, there could be an impermissible retroactive effect in that fact pattern, but your contention would be here, there isn't. You don't get to that because it's all about the relief side of it, and cancellation removal, as far as Petitioner was concerned, in 1995, was purely prospective relief. It did not exist yet. So therefore, as Landgraf states, when a law applies to pre-conduct before the law is enacted, that does not simply by itself render a law retroactive or retrospective. It has to impair vested right, create a new disability or a new obligation because of that prior conduct. But it's weird that in certain situations such as this, your argument is it's not retroactive, right? Right. But in Sinodas-Cruz, it would be retroactive because it would be impermissibly retroactive. When there was a movability ground at stake there, too, wasn't that part of it was that there was a redefinition of the ground of movability? That's the whole point, yeah. It was reclassified, whereas when it happened, it wasn't moral turpitude, and he was eligible for that 212C waiver for the later act to reclassify and say, Oh, so sorry. Guess what? It was a crime of moral turpitude. I think there's a right for 212C, which is something he had a vested right to at the time. Exactly. Here it's different because it's only about cancellation and removal, which did not exist at the time. So there's no vested right to it, as there would be in 212C, or a petitioner was eligible for 212C. And also, it did not impair that vested right. How about disability? Your colleague wants to urge that Fartalus change the whole scheme by saying a new disability, which he claims he has because now he can't accrue the seven years. I think Fartalus and St. Cyr are very instructive on this point. And new disability, that language doesn't change the Landgraf calculus because a disability presumes there's a prior ability to do something. In this case, there's no ability to have cancellation and removal prior to its enactment with a rearer. It didn't exist yet. So there's no disability on that front. If there were seven years of continuous residence before the commitment of the offense and also before the passage of a rearer, would attempting to apply that be impermissibly suggestive? You're saying there's seven years of continuous presence for 212C purposes prior to a rearer? Because that would be a form of relief that exists. I'm sorry, I'll be more specific. It's an 88 conviction. So he has, is that right? Yeah. Yeah, math gets tricky sometimes. So he has seven years of continuous residence prior to a rearer. Yeah, yes. So the question is, is trying to apply a rearer to that situation impermissibly suggestive? No, because, again, if he was happy to place a proceeding subsequently to that for cancellation and removal to arrive, to be an issue. Because at the point where he'd be seeking cancellation, he would be subsequent to a rearer in some other proceeding. In that case, he could get 212C if it was still available to him because he was eligible at that time. And that's St. Cyr. He had a vested right to eligibility to 212C. As far as cancellation goes, it's still prospective relief at that point. It didn't exist yet. And so I think that's why St. Cyr and Barnes are so instructive. Because when St. Cyr, for example, was a lawful permanent resident who pled guilty on reliance on 212C, at the time, he was eligible for 212C statutorily. And therefore, when a rearer was passed and repealed 212C, it took away that right from him. And that's what the court found. He had a right before a rearer that was taken away by a rearer. And so all of this was the same situation. But was that really critical to the court's holding? I mean, why shouldn't we think of this as a sort of permutation of St. Cyr, where the court held that prior to a rearer, aliens like St. Cyr had a significant likelihood of receiving Section 212C relief. And because respondent and other aliens like him almost certainly relied upon that likelihood in deciding whether to forego their right to a trial, the elimination of any possibility of 212C relief by a rearer has an obvious and severe retroactive effect. Here, the ability, as your adversary is describing it, was the ability to either delay or hope that apparently, as was often the case, there simply was administrative delay so that those seven years would accrue. Yes, and that's, again, just for 212C. And that's why St. Cyr goes to that, because it's reliance on 212C relief, which existed at the time. And someone could delay their proceedings and potentially get 212C. But the question is, was there an ability that is now lost? In other words, is there a disability because previously there was a reasonable possibility of those seven years elapsing and that's now gone so that it is a changed legal consequence? I would say there's a reasonable possibility that he could do that for 212C. But when cancellation doesn't exist yet, there's no reasonable possibility he could get it before it existed. So there's no retroactive principle as far as cancellation removal goes. Because he didn't have the right in 1995. Because it didn't exist. Because he wasn't able to do it. So there's no disability because he wasn't priorly able to get cancellation removal. But the question is whether for a seven-year period we should stop the accrual of the time retroactively. For an entirely separate form of relief, not 212C, which was repealed. If he had been here for seven years after that. Let's say the lawyer says, well, it's okay. You'll plead guilty. You could be deported, but they're not going to find you. So hang around for seven years and you can get what? 212C. And that's what St. Cyr says. That scenario would have a vested right to 212C. But there aren't any vested rights. Something didn't exist yet. And that's what Harada was stating. You don't get to Landgraf because cancellation, which did not exist at the time, which is purely prospective, at that point it's just whatever eligibility requirements Congress sets out for that form of relief. And Harada states that's where the menu of choices language comes in. They say you can't simply pick and choose which eligibility requirements you want to apply to your case. Because if it's prospective relief, you don't get to Landgraf. Because you just have to conform whatever the requirements were for that relief. Because it was prospective to you before it existed. So in that scenario, I would say that Harada is the correct way to think about it. There was no vested right to cancellation before it didn't exist yet. And there was no new disability attached to his right for cancellation because he was never able to get it in 1995 at the time of his conviction. Why isn't Judge Slobodar's concurrence there, right, to think about the government's ability to pre-terminate cancellation of the application as based on a retroactive application of the stop time rule? That's to pre-arrear conduct. The legal significance of that pre-arrear conduct depends on the new stop time rule in arrear. I would say in Landgraf, just because it applies to paraconduct does not make a law retrospective. It has to attach a new disability. In that sense, I would continue to argue Harada, which said there was no new disability or vested right to cancellation removal before it existed in 1996. What's the circumstance which would be impermissibly retroactive? What would have to happen? Well, like the Cenotis-Cruz. Cenotis-Cruz would be something to do with removability, but not cancellation removal. So I would argue in that sense. Even if we were to move to Landgraf analysis, we'd argue that you should follow the Fifth Circuit's decision, Heaven v. Gonzales, and find that Congress explicitly and unambiguously intended it to apply retroactively if you don't agree with the reasoning of Harada and find there is a retrospective application of the statute. That's not what the Fifth Circuit really held in Heaven. They talked about it being incongruous to apply differently in this context than in the transitional rule. But discussing whether it's incongruous or not, that's a question of statutory construction. That's not a plain language analysis. Well, they found in the plain language that that intent was expressed by the transitional rule 309C5 and the fact the cancellation removal stop time rule itself had no temporal restrictions on it. It simply says that an offense, when it's committed, renders that person, ceases to occur to me of its presence. And the transitional rule also, as amended by Nakara, said that the stop time rule shall explicitly apply to all suspension of deportation cases pending at the time of arrear. If you have that congressional intent to have it pending at the time of arrear, all those cases for a stop time rule to apply, you have the stop time rule to apply to all cases after that for cancellation removal. I think that's what the Fifth Circuit's getting at when it says it's incongruous to have this small pocket of cancellation cases where it simply wouldn't apply. You would need to express language to the contrary, stating that there are these little instances where the stop time rule doesn't apply. There's pre-rear convictions for cancellation applications because they made it very clear they wanted to apply to suspension of deportation applications by the transitional rule. And they made it very clear there's no temporal restriction in the stop time rule itself. And therefore, it would be incongruous, as the Court found, to have this pocket of cases where the stop time rule didn't apply. It wouldn't make much sense. In fact, the Ninth Circuit reached the same conclusion in Gonzales-Garcia-Ramirez, but they applied it to the third trigger on the stop time rule, the 90-180-Day Rule. There's the Notice of Appearance trigger, Criminal Grounds trigger, and the 90-180-Day Rule. And they found that the transitional rule, along with the language of the stop time rule itself, showed this expressed desire by Congress to have the stop time rule apply across the board, without exception. They reached a contrary conclusion in Cenotes Cruz about Step 1, but they didn't explain why it was different. They say they acknowledge their prior decision finding that Congress expressly wanted this transitional rule to apply to all cases or have the stop time rule apply to one trigger, but then they said for some reason it didn't apply to this other trigger. And they parsed out the reliance interest of the alien on 212C relief, but that doesn't speak to Congress's intent. So we'd argue you should follow Heaven vs. Gonzales if you don't follow Gerardo and find there is a retroactive effect that Congress explicitly intended this effect to happen. And under Step 2, if there was an unambiguous intent by Congress, you would find that, or we'd urge you to find there still is no impermissible retroactive effect because nothing has changed for this petitioner. He was ineligible for relief and deportable in 1995. He is now ineligible for relief and deportable as it currently stands in this rule of proceedings. It's kind of like maybe the Cenotis Cruz and the St. Cyr rationale would be the only situations where, you know, you accepted the plea, you know, it's not a common moral turpitude, you're not in trouble here, you know, you can still ask for the 212C waiver, and in St. Cyr, you know, a lawyer says everything's fine, and then later, whoops, you're not. So maybe that's a way of looking at it. Going back to Vardalos, which was the same scenario, not the same scenario, but I think it's just as instructive in St. Cyr because there as well, there was a right taken away by ARERA. He had a vested right to travel briefly outside the United States without being deemed an applicant for admission because of his crime involving moral turpitude, pre-ARERA conviction. Afterwards, Supreme Court stated this right was taken away, plucked away from that petitioner because of ARERA. So there was a right that existed before and was taken away after. It's almost like you're not retroactively applying the stop time rule. It's that you're looking at the prior conviction and what it meant at the time and what it didn't mean, and in all three of those cases, that's the similarity. He had kind of that whoops, I sat with counsel, and he said, you know, I could travel, you know, that's the law, and then the law isn't. The ability and disability is wrong. There is a new benefit created by Congress, and it's a new benefit that he's just simply not eligible for. I think that's the correct way to think about it. It's not retrospective in that sense because it's simply a new benefit, and he has to comply, whatever the requirements are for that new benefit, pre-conduct, post-conduct, that's just simply the requirements of the law. But your adversary would say that the change, the lost ability, is the continuous accrual of those seven years, and now retroactively there is a stop to the accrual of those seven years. He's always tying it to 212C, though. I mean, he kept referencing Vargas. He said that took away his 212C right, and that is St. Cyr, and perhaps there is retroactively, as the Supreme Court has found, there has been an impermissible retroactive effect on people that were eligible for 212C. But, again, I just urge the Court to follow Virado, which is this is cancellation. This does not exist at the time, so it's purely perspective. So you look at the moment and see what right he has as compared to what he might accrue in the future. Yeah, and I think Langreth also states that they use the term infutero relief. They look at an injunction and what an injunction can provide in the future, and they say when it's infutero relief, that's perspective. That doesn't implicate grounds of retroactivity. And so 1995, this was future relief for him. It did not exist, so it's not a retrospective issue. Thank you, guys. Sorry, just a couple quick questions. Is the government still pressing the motion to dismiss for lack of jurisdiction? I believe that was referred to the merits panel. Yes, you could dismiss this decision for lack of jurisdiction. So it's your position that this case that we've been talking about for 15 minutes now doesn't involve a question of law? It doesn't hurt because it is removal of the criminal alien, and that jurisdictional bar applies. We tend to try and move to dismiss cases on an early basis. Sorry, I'm not sure you answered the question. So the government's position is it's not a question of law presented? Not a meritorious question of law. And is it the case that the petitioner is not ineligible for cancellation of removal on any other grounds? In other words, the narcotics offense here was not an aggravated felony? No, it's not an aggravated felony, but the immigration judge never reached other grounds. It could be good moral character issues because he has a very extensive criminal record. And so there would need to be a revisitation to the other eligibility grounds if there was a remit. Thank you. Thank you. Mr. Catano, we'll hear from Roboto. Counsel for the government continues to allege and characterize his argument in the form of vested rights. You know, he talks about the ability to travel as a vested right. There is no statutorily defined right to travel under the INA. It's an ability. And so I think there has to be. At the moment, after his conviction, he had the right to travel. He did have that right to travel at that moment, and later it was taken away. Whereas in your situation, you don't have the right for the 212C waiver. You have the right to wait, but is that a right? Correct. It's not a right defined under the INA. Correct. It's a right that everyone else has as defined just, you know, having lawful status, but it's not a right as defined under the INA. And Roboto's court characterized it as an ability or a disability, you know, ability to travel. But he has that ability right then. And your client wouldn't have the ability until seven years had passed. Then he had the ability to apply for the 212C, correct? Correct. But he had the ability to continue accruing continuous presence, which the accrual. Your argument would have to be different, right? Your argument would have to be that the accrual itself is the disability. It seems that the question is, at a point in time, in Roboto's, you had a right, and at a later point in time, you didn't have a right. And from that, we now discuss new disability as the key. And I thought the judge's point was you're unable to identify a new disability. What's the new disability? He didn't have a right to a 212C at that point in time. All he had at that point in time was an ability to accrue time. If he didn't have the right then, then what's the new disability? You're not creating a new disability. That's the problem as we discuss this. I understand. I understand. And it does take a particular view, which, again, we're trying to espouse, in that someone who is deciding to forego a trial on a potential criminal ground has the ‑‑ it could be part of the calculation determining whether or not to accept a plea or to not, knowing that you were not foreclosed from particular relief if you were to be put in deportation proceedings. So that option there was not foreclosed by accepting a plea. But the option that you're talking about is the ability to accrue time. Correct. So that's the disability you want us to find? Yes. Okay. All right. Anything else? Counsel, do you want to just sum up? Yeah. One last point I did want to make is the argument we didn't discuss too much with regard to whether or not a concurrent 212C and cancellation application could be made concurrently, really there are two circuit opinions on this in the Eighth and Ninth Circuits. And if you look into the reasoning of those opinions, we would argue that they are not well flushed out to say the least. But they both go against you. I'm sorry? They both go against you. Yes, they do. In one, the court makes the determination that in light of congressional intent, those two waivers should not be permissible together, yet it does not go into even a sentence where it analyzes what the congressional intent was. The other court purports to argue that the statute was very clear in that it said that in the regulatory provision, in the statutory provision, makes it clear that the section that dealt with applying for essentially two cancellation waivers. I'm sorry, I lost my train of thought here. Our argument would be that the statutory provision is in the past tense and that that past tense has to be given some meaning. And if you would apply for a 212C and a cancellation concurrently, the grant of the 212C concurrently would not be in the past tense, and therefore it's not impermissible. Every board decision that has found that a concurrent waiver is not permissible has merely cited these two cases with very little reasoning, and the board has not given its own reasoning. And in order for a court to essentially give deference to a statutory interpretation, there has to be some reasoning there, and there is no reasoning that has been elaborated by the board. All right, and that's covered as well in your brief. Yes, it is, Your Honor. All right, thank you. The case is well argued. We'll take it under advisement and ask the court to recess court.